The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Judge King, first case is 20-7797, U.S. v. Curbow. Thank you, Madam Clerk. And our attorney for Mr. Curbow is Ms. Lyston. Have I pronounced that correctly? Yes, Your Honor. Good to have you with us, Ms. Lyston. Good to be here, Your Honor. You may proceed. Thank you, Your Honor. May it please the Court, Jenny Lyston for Gary Curbow. Your Honors, the Government's delay in certifying Mr. Curbow is not reasonable, because the Government had everything it needed to certify Mr. Curbow well before the commitment period expired, and it has failed to explain why it did not do so. When the Mississippi District Court declared Mr. Curbow incompetent on July 26, 2018, the Government knew the following about him. It knew all about his offense conduct and what he was charged with. It knew that he was mentally ill and what his diagnosis was. It had in hand an evaluation from its own expert opining that not only was he incompetent, he could not appreciate the wrongfulness of his actions, so the Government knew they would be unlikely to secure a conviction in this case. They knew his arrest history, his prior interactions with law enforcement, his prior psychiatric hospitalization. They had custody and detention reports. They had all the observational information. Okay, Ms. Lyston, this is Judge Thacker. So at that point, from July 26, under your view, then, they needed to complete their evaluation within four months, correct? They needed to assess whether he could be medicated under the 42-41-D1 period. I guess my question is the timing. It's within four months, right? And that would have ended in November, correct? That's correct, Your Honor. And what had to be done within four months? What was it that you say had to be done within the four months? The four-month period under 42-41-D1 is to assess whether that person has a condition that lends itself to restorability. So some people… So that's a competency issue. So he's already been declared incompetent. Isn't that the competency issue? That is his restorability issue, whether he can be medicated. They have to decide whether he's competent. The first thing they have to decide is whether or not he's competent. Before they can decide whether he can be restored to competency, they have to decide whether he's competent. Yes, Your Honor. That had already been declared. The Mississippi court, on July 25, 2018, declared him incompetent. So he had already been declared incompetent. And so going into the four-month under 42-41… That's right. They had to decide whether he was competent first. They said he was incompetent. Then they had to figure out whether he could be restored to competency. Correct. They weren't dealing at all with the extent he was dangerous at that point, correct? Well, so the assessment of his risk, Your Honor, we believe is implicit under 42-46. When you have a person in your custody under 42-41… Well, you're talking about statutes. It usually needs to be explicit rather than implicit. Well, the director of this facility, where the person is hospitalized, Your Honor, has to assess whether or not that person would pose a risk if released. And when they get to the end of the four-month period, Your Honor, they have to release him unless they… At the end of that four-month period, unless they have a substantial probability finding from the district court that says, okay, you can now medicate him and go on to a further… Ms. Lyston. Okay. Ms. Lyston. Let me ask you something. Ms. Lyston, this is Judge Traxtor. I just want to clarify before you go any further the answer to Judge Thacker's question. Is your position that the four months starts running on July 26? Yes, Your Honor. At the time of the commitment period begins when the district court commits him. Which is July 26? Is that your position? July 25, 2018, Your Honor. Okay. Thank you. You answered my question. Yes. Okay. And then I have a follow-up question. So then that four-month period would have ended in late November, and yet Dr. Riley didn't complete her evaluation until December 19, and that's the point at which you argue he should have been released. Is that correct? So we believe that the four-month period begins to run, Your Honor, from the time of the district court's order. So we believe that the time ran… Now, what's the order? You're talking about Judge Britt or the judge of Mississippi? No, when the Mississippi court committed him to the custody of the attorney general on July 25, 2018. We believe that… Okay. That's what before you said that was the commitment court, but in these briefs and things, a lot of them call that the criminal court, and they call Judge Britt in eastern North Carolina the commitment court. Is that right? These are new terms that are – I guess they're unique to these kinds of things, but you've got two courts here. We have a Mississippi. Indeed, you've got two sets of lawyers. Before you got into this case, he's got a lawyer that represents him in Mississippi. That's correct, Your Honor. And he agreed with the government to the initial commitment totally and without reservation. Isn't that correct? So, Your Honor… Isn't that correct? Absolutely. They jointly moved to – for him to be evaluated for competency. That was on as soon as he made his initial appearance. It was very obvious that he needed treatment, and so they… And his lawyer agreed to it and moved for it. Both of them did, the government and his attorney, Your Honor. And his attorney – that's right. And you're in it for the special purpose of whatever is happening in the eastern district of North Carolina, and his real attorney is out there in Mississippi for the criminal case. For the criminal case in Mississippi, yes. But we are dealing with his civil commitment here, Judge King. This is ancillary to the criminal case. The criminal case we are not dealing with, Your Honor, because he has now been civilly committed. Yes, Judge Traxler. Can I follow up? This is Judge Packer again. I'm sorry. Can I try to follow up my line of thinking again? So, July 26th starts the 42-41-D1 four-month period, and that ended in November. Correct. Once Dr. Riley completed her evaluation in December 19th, 2018, that was beyond the four-month period. That's correct. So shouldn't he have been released from Mississippi to North Carolina? I'm sorry. I'm not sure, Judge King. I did not hear your question. I was trying to hear the end of Judge Packer's question. I'm sorry. You all are agreeing on all these dates, and nobody's talked about the travel time that it took to get him from Mississippi to the eastern district of North Carolina in 2018. Was that part of the commitment time, or was that not part of the commitment? Judge King, our position is that it's excluded from the 42-41-D1 period, and that's because if you just left it up to the government to decide when you can ship someone, you could keep someone in definite commitment sort of indefinitely, as the government did here, to decide when it wanted that four-month commitment period to begin. So tell me again, the time period between Mississippi and North Carolina to get him here is within the four months or outside the four months? That is outside the four-month period, Your Honor. We believe that the commitment period begins when the — Well, I thought you were saying it was part of the four months. That's exactly what — you gave this first answer, but then your explanation was inconsistent with it. I'm so sorry, Judge King. I don't mean to be unclear. The four-month commitment period begins when the court commits that person to the custody of the attorney general, and then it automatically expires by virtue of the statute four months later. We don't think that the government gets any extra time for travel. There's no requirement for — there's no requirement or leeway for reasonableness in that four-month period, right? Correct, Your Honor. That is a four-month. That's all you get. So then he should have been let out. And just assuming that the four months had lapsed as of December 19th, your position is he should have been released at that time. My question is, would he have been subject to pretrial detention or some other detention at that time such that your argument would be — such that it would be harmless not to let him out at that point? No, Your Honor. He was not subject to any pretrial detention because he had not yet had a detention hearing. So he had not had a detention hearing under the bail reform act. Couldn't the government just take him into custody for the purpose of the pretrial detention hearing since they hadn't yet gone through that analysis? If they wanted to do that, they should have done that and taken him back to Mississippi, Your Honor, for a detention hearing. However, it's unclear at that point, you know, what good that would have done given that he was, you know, not competent and not — you know, their own expert had said that he couldn't appreciate the wrongfulness of his actions. So, I mean, I think it would have gone back to Mississippi that the criminal case against him would — you know, I'm not sure that he could go through that detention hearing process being incompetent the way he was, Your Honor. So — Well, he's still incompetent. On this record, he's incompetent as of now. That's correct. He's incompetent and he's unrestorable. He's incompetent, he's unrestorable, and he's dangerous. So what do you contemplate would happen to him if we ruined your favor? Is he going to go out and start shooting at planes again? Your Honor, our position would be that if this court agrees with us that the government's certificate was untimely under United States v. WADA, our position is that, yes, he would go back to Mississippi and the government would have no further authority to confine him, Your Honor. However, we feel very certain that, you know, Mr. Curbo no longer has lawful access to guns. But they would have no further authority to confine him under this civil commitment proceeding, but they would still have authority under the pretrial detention, wouldn't they or would they not? I'm not sure that they would, Judge Thacker, because he is incompetent and unrestorable. I mean, you can't, you know, prosecute — He does need to be released, Your Honor. Yes, and again — That's what I say. Your position is he has to be released. Yes, Your Honor. That is our position. He has to be released. And if he goes back — And he had to have been released by as of December 2018, right? That is our position, Your Honor. Yes. And does his lawyer in Mississippi agree with you or do you know? I have not been in contact with his lawyer in Mississippi, Your Honor. He's got the same client. I mean, you're telling us what would happen to him in Mississippi. He represents him in Mississippi. I believe the criminal case against him in Mississippi would have to be dismissed, Your Honor. That's what I understand what you're saying. I ask you if your lawyer, his lawyer in Mississippi agrees with you. I do not know. And you say you haven't been in contact with him. I'm surprised to hear that. I do not know, Judge King. I do not know that. But we feel very confident. The challenge here today is, as I understand it, is to the certification that he's dangerous made by the warden up at Butner and confirmed by Judge Britt. You haven't gotten around to that. Yes, Your Honor, because we believe the certificate is untimely under WADA. WADA makes plain that the relatively tight window for civil commitment must be strictly construed, and the government must file its certificate before the period of commitment to the Attorney General's custody ends. WADA explains that a reasonable period of time allowed under 4241D2B is, quote, only so long as to allow for reasonable, explainable administrative delays in the certification process. And, Your Honors, the government has not come forward with any sort of reasonable explanation of the delays in this case. It would be as if, Your Honors, they're just pointing to standard procedures. They filed a declaration or affidavit of one of the officials, maybe more than one. I thought they did, and Judge Britt approved it. So I'm reading this on a different record. They filed their certification, Your Honor, too late. It was untimely. It would be as if, Judge King, if I were coming to you after having filed a notice of appeal, you know, seven weeks too late. Your position is these time designations are jurisdictional. Yes, Your Honor, and under WADA. I'm with you. They didn't rule on whether they were jurisdictional or not. You can't cite WADA for that, I don't think. No, Your Honor. WADA did not reach that issue, and, you know, we've asked the courts. So that's your position, though, that it's jurisdictional. It's jurisdictional, but also under WADA makes clear that the Attorney General can only keep someone after the period of commitment expires. They have to file that certificate within a reasonable period of time. And here they did not file it within a reasonable period of time, Your Honor. They're pointing to standard procedures they follow in every certification. The delay here was if we accept your proposition on the delay is, what, 49 days or 19 days? So no matter what time period you look at, Judge King, whether you're looking at that. Which one do you say? We believe it's eight months, Your Honor. Oh, okay. But even if you go with just the seven weeks, Your Honor, that's unreasonable in light of the circumstances of this case where the government hasn't explained to you why it needed seven weeks. For example, to do a dangerousness evaluation that 4246 doesn't contemplate until after. Well, they had to explain it to us. I don't think they had to explain it to us. They had to explain it to Judge Britt. He was the district judge that was handling the thing, and he said it was explained. He accepted the explanation. Judge Britt simply said, well, because the delays here were shorter than the ones in WADA, that means it's automatically okay. And there were some delays here, but they were all reasonable. Judge Britt did not do any sort of analysis that WADA requires it to do, Your Honor. We believe the reasonableness of that 4241D2B time period depends, is necessarily going to depend on two considerations, which is one, at what point did the government possess sufficient information to file a certificate, and two, what physical, behavioral, or administrative obstacles prevented the timely filing. And we don't believe that the government has provided any reasonable explanation for the delay, which means, Your Honors, that the delay in this case is necessarily going to be replicated in every case. Your Honors, I know my time has expired. I will save the rest of my time for rebuttal. Thank you very much, Ms. Lison. Thank you. Ms. Petrie? Petrie, Your Honor. Is it Petrie? It is Petrie, Your Honor. I apologize. No problem at all. Good to have you with us. It's good to be here, Your Honor. Thank you. Go ahead. Your Honor, Jenna Petrie for the United States of America, and may it please the Court. Gary Kerbo is a mentally ill and dangerous person, and he is subject to the provisions of 18 U.S.C. 4246. The government properly certified him, and the district court properly committed him as such, and this court should affirm the findings of the district court. There's been a lot of conversation so far about the time periods and when the time period for competency restoration under 4241D begins. And pursuant to this court's decision in United States v. Flannery, the time period under 4241D begins upon the person's arrival at the facility. Is that a published opinion? I believe that it is, Your Honors, and I can provide the citation if you need it. No, I have it. I can find it. And in that case, they determined that it is the arrival at the facility that starts that 4241D four-month time period to begin. And in this case, Mr. Kerbo did not arrive at FMC Butner until August 22, 2018, and that is the day that the evaluation under 4241D begins. And there's further support. Wait, what about the July 26, 2018 time period when he was committed to the custody of the Attorney General? July 26, 2018 is the day that the court ordered the commitment and found him not competent and not restorable, but that's not the day that he arrived at the facility. But isn't that the day that the 4241D four-month period, at least the initial four-month period, begins to run? No, it is not, Your Honor. Assume that I think that it is, and assume further that I think that the four-month period lapsed in December and that at the point that Dr. Riley completed her competency evaluation, December 19, 2018, that Mr. Kerbo should have been released. What would have happened at that point? Would he still have been subject to some sort of pretrial detention, or would he have just been released? He would not have been released. His case was not dismissed. His criminal case out of Mississippi was still alive at that time. And so regardless of the fact that the evaluation wasn't completed until December 19, 2018, he was not being unlawfully held. He was always in the custody of the Attorney General, either for commitment or for pretrial detention pending those criminal charges. So he would have gone back to Mississippi, assuming that I'm right about December 19, 2018. He would have gone back to Mississippi to go through the pretrial detention process, even though he wasn't competent to stand trial? That's not necessarily required here, Your Honor. In Flannery, the court determined that… But that's what I'm asking. It's what I'm asking. So would he have gone back to Mississippi for detention proceedings, even if he was found not competent? No, he would not. Not in this case. And the reason for that is because Dr. Stripling Riley, the evaluator, who worked on Mr. Kerbo's case, didn't just opine that he was not competent and not restorable. She opined that there was a substantial probability that he could be restored in the foreseeable future. And the courts have said that the period, the 42-41D four-month period, can result in a respondent being held beyond the four-month period as long as the facility makes the evaluation and conducts that within the required time. And that does not include the time to file the evaluation with the court. And so here, even if we assume that the evaluation period, that the 42-41D period began in July and ended in November, he was still being lawfully held. And there was no problem then with the court, the criminal court, later on July 24, 2019, ordering a second period of evaluation because there can be, and it's understood that there can be, between those two periods because there has to be for administrative reasons. Courts often don't rule immediately. They don't automatically make those decisions. And that was addressed also in United States v. Flannery, as well as our sister circuits in the Ninth and the Second Circuit. Is this Flannery case you told me that was published, correct? I believe that it is, but I could be mistaken, Your Honor. I'm looking at your brief at page 31 that says it's unpublished. That would be correct. It is unpublished, Your Honor. I apologize. If not, it could be correct. It is correct. That is correct, Your Honor. But it does refer, and I'll note for the court, that it does refer to two cases from the Ninth Circuit and the Second Circuit, United States v. Villegas and United States v. Magasuba. And both of those cases, our sister circuits, rely on the same information and have come to the same determinations based on very similar facts as the facts that we're looking at here. And what those two courts have determined is that the time period has to start when the person arrives at the facility, and there's further support for that. So hospitalization in a suitable facility is what is required under 4241D. The language specifically says, the attorney general shall hospitalize the defendant for treatment in a suitable facility. But nowhere in Chapter 313 is that defined. But pursuant to United States v. Savage, there's no difference between legal custody in the Bureau of Prisons and legal custody in the attorney general. And so we can look to 28 CFR 549.41. It's the regulatory definition of hospitalization in a suitable facility. And what that says is that hospitalization in a suitable facility is the Bureau's designation of a person to a facility, either a correctional institution or a medical referral center that provides the required care and treatment. If we consider that it has to be hospitalization in a suitable facility, a suitable facility is only one that is designated by that definition. And there are only two in the Bureau of Prisons at the time that Mr. Kerba was committed to the custody of the attorney general. So it was either Federal Medical Center, Butner, or United States Medical Center for Federal Prisoners, Springfield in Missouri. And it's the arrival at that facility that has to start the time period. Not only is it the way that the statute is written based on that break in the sentence, but also it's what makes the most sense here. A person is not receiving that hospitalization, that care and treatment, and the competency restoration until they actually arrive at the facility. And so here, he did not arrive at the facility until August 22, 2018, which would mean that on December 19, 2018, Dr. Stribling-Riley completed a timely report finding him not competent and not restorable, but that there was a substantial probability that he could be restored in the foreseeable future. And then on January 24, 2019, the criminal court down in Mississippi ordered a second period of restoration under 4241D2A. Now, that would have expired on May 24, 2019. And shortly thereafter, the BOP's evaluator opined that he was not competent and not restorable. And that is when the 4246 evaluation began. And there was a lot of discussion previously about the fact that the BOP, the evaluator, could have already made that determination, but that's simply just not true. And consistent with the declaration filed by Dr. Christina Lloyd in this case, you'll see that there is a lot of differences between a competency evaluation and a dangerousness evaluation about what that evaluator needs to look at. And so it did take some additional time, but that additional time is prescribed for in 4247B. It allows for a 30-day extension of time in which the evaluator for good cause shown can continue to evaluate under 4246. And that's exactly what happened here. Your Honors, the only time that passed in this case was 49 days from the time that the doctor opined that he was not restorable to competency and the date that he was certified as dangerous. And this court in WADA told the government that they must strive to certify a person in a time that eliminates or at least minimizes the time spent not restorable. And that is certainly what the government did every step of the way here. And this court also said... Right, but you're skipping over the first part. You're skipping over the four-month time limit under 4241D1. You don't get to your reasonableness argument until you address the four-month missed deadline. And, Your Honor, we don't think that there is any four-month missed deadline here because it has to be the arrival at the facility that starts that timeline. And if we start the clock ticking on August 22nd, 2018, the evaluation completed on December 19th, 2018 was... What if it starts the clock ticking at July 26th, 2018? Then the evaluation period would have ended, I believe, in late November, probably about November 26th, 2018, and there would have been a brief time where the evaluation, the report was not written. However, that doesn't mean that he wasn't evaluated within the time. So it would mean that right on August 22nd, he started to be evaluated, even though we're missing the time, the 27 days between July 26th and August 22nd. We started evaluating him, the BOP did, right when he got in the door. And the fact that the report came later does not mean that the evaluation was untimely. And there has to be some period... How much later could the report come under your theory? If the four-month period had passed and they didn't write the report for another year, was he still evaluated within the four-month period? Your Honor, I think under those facts, it would be... Those would be very bad facts for the government, Your Honor. And I don't think that that's what we're arguing here. The statute sets a hard line at four months. Your Honor, it sets a hard line of four months for the evaluation. But again, we have to look that there has to be some period of time for the evaluator to put all of the information he or she learned during the evaluation together and to put that down on paper for the court. Where do we find that in the statute? Your Honor, it's not in the statute, which is, I think, what creates this issue. But if the evaluator has four months to evaluate the person, if that's the day that the evaluation is subsequently due, then they could lose some time continuing to evaluate such that the person could be restored in that time lost writing the report. And so there has to be some reasonable middle ground here. And we believe that the report that was authored on December 19, 2018 was close in time, it was appropriate, and it did not hold the respondent beyond the time period that he needed to be held. Because as long as the facility is making that... But the time period is not to exceed four months. And the sort of leeway you're talking about is already written into 4241D1. It says, shall hospice the defendant for such a reasonable period of time, and then it defines that reasonable period, the outlier of that reasonable period of time, not to exceed four months. Yes, Your Honor, that's correct. But that, again, that's the time period that they are permitted to evaluate. So if the doctor had continued to evaluate him after the end of the evaluation period, certainly the government would have violated 4241D1. But that's not the facts here. The facts are simply that the report came... Based on the government's belief, the report came on the day it was due, the last day of the evaluation period. And so there was no timeliness issue there. And even so, on August 28, 2018, the warden, the acting warden of Butner, he sent a letter to the criminal court advising the court of Mr. Curbo's arrival at the facility on August 22, and he notified the court that the evaluation would be completed on December 19, 2018, and that a report might follow within... Or would follow, but it might be within 14 working days of that date. FLC... Based on that letter from the warden to the criminal judge in Mississippi, that takes it to January of next year, 2019? No, Your Honor. The warden's letter noted that... What's the calculation there, the additional 14 days? December 19th plus 14 days, is that what you said? Yes, it was plus 14 days. They did not calculate that time in the letter, and they also did not utilize that additional 14 days. But what it... But it carried over into January. I believe that that's correct. It would have been very early January, Your Honor, that the report would have subsequently been filed if that were the case. And that letter is sent in every single case by the warden at FMC Butner to advise the court of a person's arrival at the facility. And that way, the court knows that the... Was that sent to counsel in Mississippi, do you know? I believe that the parties were copied on that. It was sent electronically via email, and I believe both parties... I understand, but you say you believe. I ask you if it was sent to counsel. Can you say one way or another? I cannot say one way or another, Your Honor. It is not in the record. All right. Was it on the face of the letter? I don't believe that it is on the face of the letter, Your Honor, but I will check it while we continue. Yes, it does say at Joint Appendix, page 66, it does say that both Mr. Wiggins, the assistant United States attorney, and Mr. Davis, the defense attorney, were copied on this transmission. And so all the parties... Mr. Davis is the attorney for this fellow in that criminal case. That's correct, Your Honor. And so both parties... That's what I'm getting at. That's exactly what I was getting, pound, pound, pound. Thank you. You're welcome, Your Honor. Both parties and the court were notified that they intended to file a report within 14 working days of December 19, 2018. Neither party nor the court indicated to the medical center at Butner that that was not the appropriate calculation of the 120-day period. They don't need to do that. The statute does that. The statute doesn't say anything about evaluation or extra time to write the report. It says not to exceed four months. That's correct, Your Honor. That is exactly what the statute says. And in this case, it did not exceed four months based on his arrival at the facility. And this letter from the warden simply notifies the court that the arrival came on August 22, 2018, and that the four-month period would be calculated from that date. Now, certainly, if that was not consistent with what the court wished, Butner would have been notified, and they would have, you know, accommodated the court's request. But because it's hospitalization that really starts that clock ticking, the hospitalization at the suitable facility, we believe that this was the proper way to handle the case, and that there was no lapse during the 42-41D period. And thus, he was properly in the custody of the attorney general as a person who had been committed and hospitalized under 42-41D at the time of certification, which does come within a reasonable period of time. There were administrative issues. There were also some physical and behavioral issues on the part of Mr. Curbo during the certification process under 42-46. And those are all calculated based on United States v. WADA into that reasonableness time period. Now, Respondent Mr. Curbo has argued that he has to be certified during the 42-41D hospitalization period, but that's not what United States v. WADA says. It says that he has to be certified in a time that eliminates or at least minimizes his time spent as a not-restorable person. And that's exactly what happened here. And reasonable time takes into account, it must take into account, according to WADA, the threat that the person poses to the community. And I think the courts have already, the judges have already noted. You know that what you're speaking about in WADA is not addressing what I was asking about, right? The four-month period under 42-41. Yes, correct, Your Honor. This is specific with the reasonable time period. That's correct, Your Honor. So this period that we... So it's not really analogous. No, no, Your Honor. Both periods are important here. So the first period... No, I agree with that. I said analogous, not important. I agree it's important. I'm just saying that in my view, you're comparing apples to oranges. I agree this whole thing is very important. Well, and I guess the point I'm trying to make, Your Honor, and I apologize if I'm not very clear, is that there are no issues. Ma'am? Yes, Your Honor. I've got the certification that's on appeal here is the one of 17 July 2019. Is that not correct? Yes, Your Honor, that's correct. And that was filed. It says on the face of it pursuant to 4246A. That's correct. Okay. I don't want to make sure I was looking at the right one. It said Joint Appendix 9. Thank you. That's correct, Your Honor. The reason that it says 4246A is because that's specifically the terms of the certification. But under 4246A, I apologize, Your Honors. I see that my time has expired. May I briefly answer your question and Judge Thacker's question and conclude? Yeah, you can answer those questions. I don't have a pending question. You can answer my question, and then you can answer any other questions you get, of course. Thank you, Your Honor. Just to clarify, that the face of the certificate, it says that he was certified under 4246A. 4246A includes three elements of people who can be certified under that particular statute. The reason that I mentioned that he was a person who had been committed under 4241D is because that is one of the classes of people who can be certified under 4246. And it is the government's belief that he was properly certified, he was properly in the custody of the Attorney General at the time of the certification, that this is not a subject matter jurisdiction issue, and that the findings of the district court should be affirmed in this case. And I thank Your Honors for your time. And I got another question, though. Absolutely. Is this on, for those issues that you just delineated, is it Plain Error Review or Harmless Error Review? There are two issues on Plain Error Review here, Your Honor. The first is the state placement issue that has already been addressed by this court in two unpublished cases, United States v. Foltz and United States v. Duncan. The second Plain Error issue before this court is the issue of the district court's findings and the sufficiency of those findings, which was not raised below. And so pursuant to United States v. Higher, they must meet the Plain Error standard. And they have not met that standard. And those findings on both the issue of the state placement and the sufficiency of the findings should be affirmed. If Your Honors have... Judge Thacker, you got any further questions? No, thank you. Judge Traxler, you got any questions? Let me ask Ms. Petrie just one question. Has any judge or doctor ever found that it's safe to release Mr. Curbo to the general population? No, Your Honor. Okay, thank you. That was my only question for Ms. Petrie. Thank you, Judge Traxler. Thank you, Ms. Petrie. We appreciate it. Thank you, Your Honors. Are you still there, Ms. Lison? I'm right here, Your Honor. You have some rebuttal time, and we'll be pleased to hear you. Thank you. Thank you so much. I'd like to make very clear, I think this court should be worried about the government's position in this case and its statutory interpretation is causing systemic delays in a process that Congress has said should be a very expedient one. Congress specifically enacted these statutes to comply with Jackson v. Indiana's constitutional limitations against indefinite commitment. Yes, Your Honor. I'm sorry. I thought Judge Decker, do you have a question? No, go ahead. I'm so sorry. First of all, this notion, Your Honor, that the only suitable facility would be a BOP facility. Basically, in the government's view, they have to send everyone to either Butner or Springfield, which of course results in the very foreseeable problem of huge waiting lists at Butner and at Springfield. Of course, the statutes themselves, Your Honor, expressly authorize the Attorney General to place people for evaluation in practically any other place. They can contract with any state, any county, any private facility to perform these evaluations. And also, notably, Congress directs that these really should be taking place in a facility closest to the court. But instead, of course, the government's just sending everyone to Butner and Springfield. The government's own expert admits that there's a 13 to 15-week waiting list at Butner. That's what she explained. That's where they have the expertise. That's been that way for years and years and years and years, Springfield Hospital and Butner facility.  Yes, Your Honor, but they only have four months. They're overworked and overextended. I've been to both of them, ma'am, as a lawyer. I've observed some of the stuff that they do. So again, Your Honor, we just respectfully disagree that the four-month commitment period starts at the arrival time at the designated facility. It starts with the district court's order. And that's what this court indicated in WADA. Judge Thacker, you wrote a very plain, very easy-to-follow timeline in WADA indicating that the four-month commitment period starts when the district court commits that person. Otherwise, we have people just sitting around in transit for months and months until the government finally gets around to actually transporting these people. So if they kept them in transit for four months, they'd have to release them in your theory. This fellow would be down in Mississippi shooting military planes again. Your Honor, what I think needs to happen is what Congress has indicated should happen is that these proceedings take place expeditiously. Because, again, we're talking about incompetent people who must be presumed innocent. The most important thing is that these examinations be conducted properly. There's major public safety issues involved in each of them. They need to be conducted properly for the public interest and for the interest of the individual. Your Honor, we have no quarrel with that. And the four-month commitment period is by far the longest time in the mental health statute. It gives the government plenty of time to decide whether or not this person can be treated. And it's also the government's duty to protect the public for sure. So they need to make that decision whether or not that person is coming up on release before we release this individual. Because we don't have any authority to hold them longer than four months. We need to decide whether the only way to hold that person is to file the 4246 certificate, which, again, is just a minimal burden on the government, Your Honor. You only have to attest to three facts, and three facts only. Does this person have a mental illness? Because of this mental illness, do they pose a risk? And three, is there state placement available? Nowhere do you have to do a dangerousness evaluation. That comes only after the certification. So all of this time, and I'd like to go back. And as your colleague there said, the lady from the government, that's a complicated issue, more complicated, the dangerous evaluation I'm talking about. And it comes, Your Honor, under 4246B. That comes after the certificate is filed. And the doctor that was designated to evaluate this gentleman for himself, his own doctor agreed with the government doctors. He's incompetent, and he's dangerous. Yes, Your Honor, and they knew that well before the commitment period expired. So if they wanted to keep him past that four-month deadline, they needed to file that 4246 certificate to keep him there, or get a substantial probability finding from the district court, which they did not do. And so, Your Honors, they had plenty of information. They could have filed their 4246 certificate back in November 26, 2018. It's not a high burden. It would be as if, Judge King, I were coming to you after having filed a notice of appeal seven weeks too late, and you're saying, it's not comparable to a notice of appeal. Notices of appeal are jurisdictional. These timelines are not jurisdictional. We respectfully disagree with that, Your Honor. But we don't think that in any event this court in Thames said that those requirements for filing that certificate are extremely minimal. It's a very low burden on the government to just file the certificate then it stays the person's release, the person is stayed, and then the government has plenty of time to do that dangerousness evaluation. But they're doing so under the watchful eye of the court, and not simply sort of whenever we get around to it, we want an extra 30 days, 45 days. It's simply not reasonable, Your Honor. And so for those reasons, Your Honor, and for the reasons in our brief, we ask this court to vacate the order of civil commitment and remand this case to the district court for dismissal of the certificate. Thank you, Your Honors. Thank you. Thank you very much, and thank both of you for your arguments. We appreciate it very much. If we were in Richmond, like we hope to be this fall, we would at this point come down from the bench and recounsel and tell you personally that you've done a good job. Well, we can't do that today, so we'll take this case under advisement.
judges: Robert B. King, Stephanie D. Thacker, William B. Traxler Jr.